# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| United States of America *ex rel.* | ) |
|---|---|
| KEVIN BLUMENBERG, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 04 C 3260 |
| v. | ) |
| | ) Judge John W. Darrah |
| SHELTON FREY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner, Kevin Blumenberg, was convicted of murder and armed robbery in the Illinois state courts. Respondent, Shelton Frey, is the warden of the prison where Petitioner is incarcerated. After his direct appeals were denied, Petitioner's collateral review in the Illinois state courts was denied.

Presently before the Court is Petitioner's Petition for Writ of Habeas Corpus, filed under 28 U.S.C. § 2254. Petitioner raises three issues: (1) whether the State used perjured testimony at a suppression hearing; (2) whether the appellate court, on collateral review, made unreasonable factual findings; and (3) whether Petitioner's trial counsel was ineffective in failing to impeach certain witnesses at the suppression hearing. For the following reasons, the Petition for Writ of Habeas Corpus is denied.

## BACKGROUND

Petitioner was sixteen when he was arrested on January 18, 1991. Petitioner received *Miranda* warnings, was interrogated, and eventually gave a court-reported statement. However, throughout these proceedings, no parent or other adult concerned with Petitioner's welfare was

present. Under Illinois law, the presence of a parent or other adult concerned with a defendant's welfare is one of many factors used to determine whether a statement was voluntarily given. *E.g., In re Lashun H.*, 672 N.E.2d 331, 335 (Ill. App. Ct. 1996). Petitioner was not advised of this right at his interrogation.

Petitioner then sought to suppress his statement by arguing that it was not given voluntarily. Specifically, Petitioner contended that the police officers failed to make proper efforts to contact one of his parents or a concerned adult and that he asked to see his grandmother.

At the suppression hearing, Detective Barry Costello testified that, after Petitioner was arrested, Petitioner's mother and father were both called and that a police car was sent out to the mother's home address. Neither of Petitioner's parents could be located. Detective Costello also testified that Detective Frank Glynn also attempted to contact Petitioner's grandmother, Nellie Moore, after Petitioner was arrested, but that she refused to do so because Petitioner had burglarized her home.

On cross-examination, Petitioner attempted to elicit from Detective Costello that Detective Glynn was incorrect and that he had contacted the grandmother of Petitioner's co-defendant, Jamie Clark. Detective Costello still believed that Petitioner's grandmother was contacted. On re-direct, the State refreshed Detective Costello's recollection with a General Progress Report, dated January 17, 1991, to determine which grandmother's house was burglarized. This report, authored by Detective Glynn, stated that Clark burglarized his own

grandmother's house. After having his recollection refreshed, Detective Costello still contended that Petitioner's grandmother's home was burglarized by Petitioner. Petitioner did not attempt to impeach Detective Costello on re-cross examination.

Petitioner's aunt, Georgina Moore, also testified at the suppression hearing. She stated that he she lived with Nellie Moore and that she was home all day on January 18, 1991. According to Georgina Moore, the only time police officers came to her home to speak with Nellie Moore was prior to Petitioner's arrest. At this time, Nellie Moore stated that Petitioner was not welcome in her home because he caused trouble.

The trial court denied Petitioner's motion to suppress. The court stated, in pertinent part, that:

> I would further find and the primary question I believe is whether or not the State through the police officers did everything they should as required by the Illinois Statutes concerning the contacting of family members in order that an adult may be present with the [Petitioner] at the station. Each of the officers has testified as to what they did. The last officer is the one who in fact ordered the car to make, a car at the mother's home as well as spoke with the grandmother, the aunt, and I believe the natural father is I recall the testimony, Detective Glynn.
>
> Under all the attendant circumstances I think that the officers acted reasonably, that there was an attempt[] to comply with the Statute. There was no alternative[], reasonable that I think and under all the attendant circumstances I would feel that his rights in regard to the Illinois Statute and the Federal Constitution regarding having a member of the family present was complied with.
>
> Under all the attendant circumstances therefore I would find the [Petitioner] did in fact give a Court Reported Statement. That statement was freely and voluntarily made after due consideration of the Miranda Warnings. The Miranda Warnings were freely and voluntarily waived and the statement was knowingly and intelligently, freely and voluntarily made. Accordingly I respectfully deny the [Petitioner's] Motion to Suppress Statement.

Pet'r Ex. O-P.

Petitioner has also attached to his petition an affidavit dated May 16, 1996, from Nellie Moore. This affidavit states that Nellie Moore did not tell police that Petitioner burglarized her home or that she would not come to the police station. Nellie Moore's affidavit was not considered in conjunction with the original motion to suppress.

In the final ruling on Petitioner's petition for post-conviction review in the state courts, the Illinois Appellate court first discussed the facts concerning when police officers came to visit Georgina Moore. "Georgina Moore, [Petitioner's] aunt, testified that she lives with Nellie Moore and was home all day on January 18, 1991. Police officers came to the house **before** [Petitioner's arrest], looking for Petitioner. . . . The police did not call again **after** Petitioner was arrested." Resp't Ex. F, at 2 (emphasis added).

The court then discussed Petitioner's perjury claim:

> [Petitioner] first claims that he made a substantial showing that the State knowingly offered the perjured testimony of Detective Costello [stating] that Detective Glynn told [Detective Costello] Nellie Moore said she would not come to the station because [Petitioner] had burglarized her home. Although the police report [Petitioner] offers shows Clark's grandmother made such a statement, the record also shows that [Petitioner's] aunt, Georgina Moore, testified that Nellie Moore told police before the arrest that [Petitioner] was not welcome in her home because he caused trouble. The record also shows that the officers attempted to contact [Petitioner's] mother and father by telephone, and sent a car to the mother's home. We do not believe Petitioner has made a substantial showing that Detective Costello knowingly offered perjured testimony. At most, the discrepancies in Costello's testimony went to the weight of his testimony. It is the province of the trier of fact to resolve conflicts in testimony and to make credibility determinations.

Resp't Ex. F, at 4.

As to Respondent's ineffective assistance of counsel claims, the Illinois Appellate court stated that "[t]o establish the ineffective assistance of counsel, a defendant must show that his

4

attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different if the attorney had not made the errors. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 674, 104 S. Ct. 2052 (1984))." Resp't Ex. F, at 6. The court next discussed that multiple factors exist in determining the voluntariness of a confession, and that additional factors exist for juvenile confessions. The Appellate court then when on to hold:

> Even taking [Petitioner's] allegations as true, he has not made a substantial showing that his constitutional rights were violated. Even if trial counsel had impeached Detective Costello with the police report and Nellie Moore's testimony that she was not contacted immediately after [Petitioner's] arrest, the record shows that the outcome of the suppression hearing would not have been different. The trial court found, and the record shows, that officers attempted to contact [Petitioner's] parents after his arrest and a youth officer was present during each interrogation. [Petitioner] gave a court-reported statement after being given *Miranda* warnings. Unlike *People v. Motanez*, 237 Ill. App. 3d 844, 849, 652 N.E.2d 1271 (1995), [Petitioner's] parents were not present at the station or prevented from seeing [Petitioner]. [Petitioner] has not provided sufficient evidence to contradict the trial court's findings of fact.

Resp't Ex. F, at 6.

## ANALYSIS

Petitioner here presents three issues; the first two are interrelated. First, Petitioner argues that the State used the perjured testimony of Detective Costello at the suppression hearing concerning whether police officers contacted Petitioner's grandmother, Nellie Moore. Second, Petitioner asserts that the state appellate court on post-conviction review misapprehended Georgina Moore's testimony in concluding that police officers spoke with Georgina Moore on January 18, 1991, after Petitioner was arrested. Finally, Petitioner contends that his trial

counsel was ineffective at the suppression hearing by failing to impeach Detectives Glynn and Costello with the General Progress Report which stated that co-defendant Clark's grandmother's house was burglarized by Clark.

Under 28 U.S.C. § 2254(d), a writ of habeas corpus of a person in custody pursuant to a state court judgment will only be granted if the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the first prong, Petitioner has the burden of proof to show that the application of federal law was unreasonable and not just incorrect. *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004). Supreme Court cases need not be cited by the state court, so long as the reasoning or result of the state-court decision does not apply federal law unreasonably. *See Early v. Packer*, 537 U.S. 3, 8 (2002). Under the second prong, the Petitioner must show by clear and convincing evidence that the state court's factual determinations were unreasonable. *Matheney v. Anderson*, 377 F.3d 740, 747 (7th Cir. 2004).

Petitioner first claims the State used the perjured testimony of Detective Costello at the suppression hearing. According to Petitioner, Detective Costello's testimony was directly contradicted by: (1) Nellie Moore's affidavit, (2) Georgina Moore's testimony, and (3) the General Progress Report.

The introduction of perjured testimony, by itself, does not amount to a constitutional violation warranting habeas relief. *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002)

(*Harding*). Instead, Petitioner must demonstrate: "(1) that the prosecution indeed presented perjured testimony, (2) that the prosecution knew or should have known of the perjury, and (3) that there is some likelihood that the false testimony impacted the jury's verdict." *Harding*, 300 F.3d at 828.

Here, Petitioner has failed to make the required showing. Nellie Moore's affidavit, which was not considered in the state court's ruling on the motion to suppress, would only affect the weight of Detective Costello's testimony, even if it was considered. Similarly, Georgina Moore's testimony concerning when the police officers came to visit only affects the weight of Detective Costello's testimony.

The General Progress Report also fails to show that Detective Costello's testimony amounted to perjury. Petitioner makes much of the fact that the General Progress Report was used to refresh Detective Costello's recollection and that, therefore, Detective Costello should have known that it was the grandmother of Petitioner's co-defendant, Clark, whose home was burglarized by Clark. However, simply showing Detective Costello the General Progress Report does not indicate his testimony was false; any source can be used to refresh a witness's recollection, and the source and its contents are not evidence. More critically, the report is dated January 17, 1991, the day before Petitioner was arrested. Detective Costello testified that Nellie Moore was spoken to on January 18, 1991, concerning Petitioner's arrest. Thus, nothing in the General Progress Report directly contradicts Detective Costello's testimony. The state appellate court on post-conviction review recognized the possible discrepancies and properly determined that these issues went to the weight of Detective Costello's testimony.

The appellate court also noted that, even if Detective Costello's testimony was incorrect, the testimony would not have affected the decision to suppress Petitioner's statement. Georgina Moore testified that Nellie Moore stated Petitioner was not welcome in her home. The appellate court further stated that police officers attempted, through multiple methods, to contact Petitioner's parents. Petitioner has not rebutted these factual findings by clear and convincing evidence.

Based on the above, Petitioner failed to make his required showing that it was not an unreasonable application of clearly established federal law or an unreasonable determination of the facts to conclude that Detective Costello's testimony did not amount to perjury warranting habeas relief.

Petitioner next argues that the state appellate court on post-conviction review misunderstood Georgina Moore's testimony in concluding that police officers spoke with Georgina Moore after Petitioner was arrested. According to Petitioner, the Appellate court erroneously, therefore, credited Detective Costello's testimony as truthful in considering the finding against Defendant on the motion to suppress. However, the appellate court stated that Georgina Moore testified that police officers came to the house **before** Petitioner's arrest, but that the police did not call again **after** Petitioner was arrested. Accordingly, the appellate court did understand the relevant facts; and Petitioner has failed to show by clear and convincing evidence that the state court's opinion in this regard was unreasonable.

Finally, Petitioner contends that he was denied the effective assistance of counsel because his trial counsel failed to impeach the testimony of Detectives Glynn and Costello with the General Progress Report at the suppression hearing. According to Petitioner, if the Detectives

were impeached, it would have shown that the General Progress Report indicated that Clark – not Defendant – burglarized his grandmother's house, contrary to the Detectives' testimony. Thus, the remaining parts of the Detectives' testimony would have been viewed with suspicion, the trial court would have questioned whether the police officers attempted to contact Petitioner's parents, and the motion to suppress would have been granted.

"To prevail on his ineffective assistance of counsel claim, [Petitioner] must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness and (2) caused his prejudice." *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) (*Murrell*) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). As long as the state court properly identified and applied this legal standard, as it did here, Petitioner's ineffective assistance of counsel claim may only be granted if the state court unreasonably applies this standard to the fact of the case. *Murrell*, 332 F.3d at 1111. This bar is a high standard, as the state court must make a clear error. *Murrell*, 332 F.3d at 1111. If the state court "took the constitutional standard seriously and produced an answer within the range of defensible positions," then Petitioner's claim must be denied. *Murrell*, 332 F.3d at 1111 (citation omitted). All factual determinations, including credibility decisions, are presumed correct unless rebutted with clear and convincing evidence. *Murrell*, 332 F.3d at 1112.

Here, the post-conviction appellate court held that even if Petitioner's trial counsel impeached the Detectives' testimony with the General Progress report and Nellie Moore's testimony, the outcome of the suppression hearing would not have changed. The appellate court held, in affirming the trial court, that the police officers made attempts to contact Petitioner's parents. Petitioner argues that the Detectives knew his parents would not be available because

the Detectives were aware of his parents' work schedules. However, Petitioner has failed to demonstrate, with clear and convincing evidence, that the state courts' factual findings in this regard was incorrect.

In affirming the trial court, the appellate court also considered the multiple factors to determine the voluntariness of a juvenile's confession. The appellate court noted that a youth officer was present during the interrogations; Petitioner gave a court-reported statement; and Petitioner received *Miranda* warnings. The appellate court concluded that Petitioner had not provided sufficient evidence to contradict the trial court's findings of facts. Petitioner has failed to do so here, as well. He has not rebutted any of the state courts' factual determinations with clear and convincing evidence to the contrary. The post-conviction review by the appellate court fully considered the issue of assistance of counsel, applied the appropriate standard, and reached a conclusion within the range of defensible positions. Accordingly, Petitioner's ineffective assistance of counsel claim is denied.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is denied.

Dated: 2-9-05

JOHN W. DARRAH
United States District Judge